*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLE EILEEN HANSHUE,

Plaintiff-Appellant,

v

WAYNE KENNETH HANSHUE, also known as
WADE HANSUE and WADE KEITH HANSHUE,

Defendant-Appellee.

UNPUBLISHED
August 27, 2020

No.  350658
Montcalm Circuit Court
LC No.  2016-021249-DM

Before:  BORRELLO, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Plaintiff, Nichole Eileen Hanshue, appeals by leave granted the trial court's order denying her request to change the school placement for the parties' minor child.  We reverse the trial court's order and remand for further proceedings.

The parties divorced in 2017 during the child's second-grade school year.  The trial court awarded the parties joint legal and physical custody of the child.  The child had academic difficulties and tested below grade level in reading and language arts beginning in his kindergarten year.  The child also received counseling for generalized anxiety and adjustment disorder, and he was diagnosed with attention-deficit hyperactivity disorder (ADHD).  Plaintiff filed a motion to change the child's school placement from Montabella public schools to either Rockford public schools or Greenville public schools.  Plaintiff argued that it was in the child's best interests to attend those schools, rather than Montabella, on the basis of the academic performance of those schools and the resources and interventions that were available to meet the child's needs.  Defendant opposed changing the child's school placement and believed that the risk to the child's mental health as a result of the change of schools did not outweigh the potential opportunities and advantages of changing schools.

After a hearing, the referee denied plaintiff's motion to change schools.  Plaintiff filed an objection to the referee's recommendation and order and requested a de novo hearing before the trial court.  At the conclusion of the de novo hearing, the trial court denied plaintiff's request to change the child's school placement.  However, the trial court ruled that either party could move

to change the child's school placement after the child's upcoming (fourth-grade) 2018-2019 school year. After the child's fourth-grade school year, plaintiff refiled her objection to the referee's recommendation and order and requested a de novo hearing before the trial court. The trial court held a hearing and determined that the child had an established custodial environment with both parties and that changing the child's school would not modify the established custodial environments. The trial court ultimately, however, determined that changing schools was not in the child's best interests on the basis of the child's emotional and mental health and the stability and consistency of his school environment at Montabella. Plaintiff now appeals the trial court's order.

Plaintiff first argues that the trial court violated her due-process rights by failing to consider evidence from the referee hearing. We disagree.

Generally, this Court reviews de novo constitutional issues. *Kampf v Kampf*, 237 Mich App 377, 381; 603 NW2d 295 (1999). Additionally, "[w]hen an evidentiary question involves a question of law, such as the interpretation of a statute or court rule, our review is de novo." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008).

MCL 552.507 permits a de novo court hearing of any matter that was placed before a referee. The statute provides, in relevant part:

> (4) The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court. The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party.
>
> (5) A hearing is de novo despite the court's imposition of reasonable restrictions and conditions to conserve the resources of the parties and the court if the following conditions are met:
>
> (a) The parties have been given a full opportunity to present and preserve important evidence at the referee hearing.
>
> (b) For findings of fact to which the parties have objected, the parties are afforded a new opportunity to offer the same evidence to the court as was presented to the referee and to supplement that evidence with evidence that could not have been presented to the referee.
>
> (6) Subject to subsection (5), de novo hearings include, but are not limited to, the following:
>
> (a) A new decision based entirely on the record of a previous hearing, including any memoranda, recommendations, or proposed orders by the referee.
>
> (b) A new decision based only on evidence presented at the time of the de novo hearing.

(c) A new decision based in part on the record of a referee hearing supplemented by evidence that was not introduced at a previous hearing. [MCL 552.507.]

In addition, when a party objects to a referee's findings and recommendations, the circuit court's review is guided by MCR 3.215(F), which provides, in relevant part:

(2) To the extent allowed by law, the court may conduct the judicial hearing by review of the record of the referee hearing, but the court must allow the parties to present live evidence at the judicial hearing. The court may, in its discretion:

(a) prohibit a party from presenting evidence on findings of fact to which no objection was filed;

(b) determine that the referee's finding was conclusive as to a fact to which no objection was filed;

(c) prohibit a party from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing;

(d) impose any other reasonable restrictions and conditions to conserve the resources of the parties and the court.

In this case, the parties do not dispute that they were given a full opportunity to present and preserve important evidence at the referee hearings. The lower court record supported that the parties presented evidence during the referee hearings regarding the child's academic performance at Montabella from kindergarten to third grade, the child's social development at Montabella, the opportunities available at the Rockford and Greenville public schools, and the parties' concerns regarding changing the child's school placement. Furthermore, the trial court gave the parties an opportunity to offer the same evidence that was presented to the referee and to supplement that evidence at the de novo hearing. There was no indication in the lower court record that the trial court restricted the parties' presentation of evidence during the de novo hearing. Therefore, the trial court's de novo review of the referee hearings complied with MCL 552.507(5).

The lower court record supported that the trial court considered evidence that the parties presented during the de novo hearing and evidence from the referee hearings. For example, the trial court addressed the parties' history of co-parenting and facilitating a close relationship between the child and the other parent, and the trial court indicated that it analyzed this best-interest factor "in listening to the testimony previously and then here today." Additionally, although the trial court did not address the child's academic performance during his fourth-grade school year, the trial court addressed the child's school situation and social development during that time. It also weighed the child's home environment in the Greenville area and the academic and sports opportunities at the Greenville schools against the consistency and friendships that the child developed at Montabella. The trial court did not plainly err in conducting the de novo hearing, and plaintiff did not establish that the trial court violated her due-process rights. See *Marik (On Remand)*, 325 Mich App at 359.

Plaintiff next argues that the trial court committed reversible error by failing to interview the minor child regarding his school preference. We agree.

Regarding this Court's review of custody orders, all orders and judgments of the circuit court must be affirmed on appeal unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue. MCL 722.28. "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Lieberman v Orr*, 319 Mich App 68, 76-77; 900 NW2d 130 (2017) (quotation marks and citation omitted). In other words, a trial court commits clear legal error if it fails to properly apply the law. *Sulaica v Rometty*, 308 Mich App 568, 583-584; 866 NW2d 838 (2014). A clear legal error "generally require[s] remand for further consideration under the proper legal framework unless the error is harmless." *Id*. at 585 (quotation marks and citation omitted).

MCL 722.23(i) provides that the court must consider "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference" when considering the best interests of a child in a child custody proceeding. "A child over the age of six is presumed to be capable of forming a reasonable preference." *Maier v Maier*, 311 Mich App 218, 224; 874 NW2d 725 (2015). This Court has found reversible error where the trial court failed to take into consideration the reasonable preferences of children over the age of six. See *Bowers v Bowers*, 190 Mich App 51, 55-56; 475 NW2d 394 (1991). When evaluating whether the child formed a preference, the trial court considers whether the child is of sufficient age to form a preference and whether the child's capacity to give his or her preference is compromised by infirmity, disability, or other circumstances. *Maier*, 311 Mich App at 225.

A trial court is not required to interview a child in order to make factual findings regarding the child's capacity to form a preference and the child's preference. *Id*. at 225. The trial court may determine a child's capacity to form a preference and the child's preference on the basis of the trial court's interview of the child, an interview of the child using an evidence-based protocol, or information from a mental health professional. *Id*. In determining whether a child's preference is reasonable, the trial court may consider the child's emotional state and whether there were efforts to influence the child's preference, such as coaching the child to express a certain preference or an emotionally distressing situation that influenced the child. *Id*. at 225-226.

In this case, the child was 10 years old at the time of the de novo hearing and was thus presumably old enough to form a reasonable preference. See *id*. at 224. Although there was testimony that the child was diagnosed with adjustment disorder and ADHD, there was no indication that his capacity to form a preference was compromised by infirmity, disability, or any other circumstance. See *id*. Therefore, the child presumably had the capacity and was of sufficient age to form a reasonable preference regarding his school placement. See *id*.

The trial court did not determine whether the child was of sufficient age and capacity to form a preference. The trial court also did not interview the child regarding his preference. The trial court did not discuss the referee's findings or otherwise discuss the child's interview with a Friend of the Court deputy that occurred during the proceedings before the referee. Rather, the trial court only considered the parties' testimony during the de novo hearing that they believed the child would express a preference to remain at Montabella. Additionally, the trial court did not

-4-

determine whether the child's preference to remain at Montabella was reasonable or whether it was influenced by a parent or outside factors. Although the trial court was not required to interview the child, the trial court plainly erred by relying on the parties' opinions of the child's preference, rather than determining whether the child had the capacity to form a preference, what school placement the child preferred, and whether that preference was reasonable. See *id*. at 224-225.

"The right to have a reasonable preference considered attaches to the best interests of the child, not to the rights of the contestants in the custody battle." *Id*. at 224. The trial court considered best-interest factor MCL 722.23(i) when it decided not to change the child's school placement, but this determination was based on a lack of proper analysis concerning the child's preference. This was error requiring reversal. See *Bowers*, 190 Mich App at 56.

Finally, plaintiff argues that the trial court erred in its analysis of the best-interest factors and failed to consider several best-interest factors when it determined that it was not in the minor child's best interests to change schools. We agree with plaintiff regarding best-interest Factors (i), (f), (g), and (k).

This Court reviews a trial court's findings of fact in custody orders to determine whether the findings were against the great weight of the evidence. *Pierron v Pierron*, 282 Mich App 222, 242; 765 NW2d 345 (2009). A trial court's finding is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. *Id*. "The abuse of discretion standard applies to the circuit court's discretionary rulings; A ruling concerning an important decision affecting the welfare of a child is such a discretionary ruling." *Id*. at 243 (internal citation omitted). If a trial court fails to make a finding regarding the existence of a custodial environment, or the best-interest factors set forth in MCL 722.23, this Court will generally remand to the trial court for a new hearing. *Rittershaus v Rittershaus*, 273 Mich App 462, 471, 475-476; 730 NW2d 262 (2007).

When parents share joint legal custody of a child, but cannot agree on an important decision, such as a change of the child's school, the court is responsible for resolving the issue in the best interests of the child. *Pierron*, 486 Mich at 85. "When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment." *Id*. If the established custodial environment remains the same, the moving party must prove by a preponderance of the evidence that the proposed change is in the best interests of the child, using the 12 best-interest factors set forth in MCL 722.23. *Id*. at 91. The trial court must make specific findings of fact regarding the applicability of each factor. *Id*. If the trial court determines that a factor is irrelevant to the issue before it, the trial court must state that conclusion on the record but need not make substantive findings of fact regarding that factor. *Pierron*, 486 Mich at 91, 93. The trial court need not consider every piece of evidence when making its findings of fact, but the record must be sufficient to facilitate appellate review. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005).

MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

In this case, the trial court found that the change in school would not affect the established custodial environment. The trial court then found that factors (a), (b), (c), (e), (h), and (j) weighed equally or neutrally regarding a change of the child's school and that factors (d), (i), and (*l*) weighed against changing the child's school placement. Plaintiff challenges the trial court's application of the law and/or factual findings regarding factors (b), (c), (d), (f), (g), (h), (i), (k), and (*l*).

Regarding best-interest factor (b), the trial court found that both parties had the capacity and disposition to give the child love, affection, and guidance, and to continue the child's education

-6-

and religion. The lower court record supported that the parties disagreed regarding the child's school placement, school performance, and social development. The parties were nonetheless involved in the child's education by attending meetings with representatives of Montabella, providing the child with parental guidance, and providing him with tutoring and at-home reading support. Both parties were involved in the child's education and development, and there was no evidence to suggest that either party lacked the capacity to provide the child with love, affection, and guidance. The trial court had the opportunity to assess the credibility of the witnesses and weighed the parties' testimonies equally. It cannot be said that the evidence clearly preponderates in the opposite direction of the trial court's findings regarding this factor.

Regarding best-interest factor (c) (capacity of the parties to provide the child with necessities and material needs), the trial court found that both parties were capable and disposed to meet the child's necessities and medical needs. The lower court record supported that the parties were able to provide the child with food and clothing and that the parties took the child to various medical appointments, including regularly scheduled wellness checks and counseling sessions. There was no evidence to suggest that either party lacked the capacity to provide for the child's necessities and medical needs. The evidence presented during the evidentiary hearing supported weighing this factor equally, and the evidence did not clearly preponderate in the opposite direction of the trial court's findings regarding this factor.

The trial court weighed best-interest factor (d) (the length of time that the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity) in defendant's favor because defendant provided the child with a stable and consistent home and community in the Montabella school system since his birth, whereas the child experienced changes when the parties separated and divorced and when plaintiff moved to the Greenville school district. The lower court record supported that the child's home with defendant and school were stable. Although the trial court did not find whether the school environment was satisfactory, the trial court found that the child had an established community at Montabella. The trial court also indirectly found that maintaining continuity was desirable in light of the changes to the child's family life, including the parties' divorce and plaintiff's relocation to a new neighborhood. The trial court had the opportunity to assess the credibility of the witnesses and gave greater weight to defendant's testimony that consistency was important for the child. The trial court did not commit clear legal error in its evaluation of this best-interest factor, and the evidence did not clearly preponderate in the opposite direction of the trial court's findings against changing the child's school placement.

Best-interest factor (f) refers to a person's moral fitness as a parent. The trial court did not make any factual findings regarding this factor. Although the parties testified regarding their relationship with the child, their involvement in his educational development, and the child's academic performance, the trial court did not determine how the parent-child relationships affected the child's schooling. There was no evidence that the parties were not fit as parents. However, there were not sufficient remarks by the trial court or support from the lower court record to discern the trial court's findings regarding best-interest factor (f), or whether the trial court deemed best-interest factor (f) irrelevant, and to facilitate appellate review. Therefore, this error requires reversal. See *Rittershaus*, 273 Mich App at 475-476.

The trial court also did not make any factual findings regarding best-interest factor (g) (the parties' mental and physical health). There was no evidence in the lower court record that either party had a physical disability or a mental health diagnosis. There was also no evidence of a physical or mental health condition that would affect either party's ability to parent. However, there were not sufficient remarks by the trial court or support from the lower court record to discern the trial court's findings regarding best-interest factor (g), or whether the trial court deemed best-interest factor (g) irrelevant, and to facilitate appellate review. Therefore, this error requires reversal. See *Rittershaus*, 273 Mich App at 475-476.

Regarding best-interest factor (h) (the child's home, school, and community record), the trial court found that Greenville schools provided greater academic and sports opportunities for the child and that the child had friends within the Greenville school district. However, the trial court also found that child attended Montabella since he began attending school, Montabella provided consistency in the child's community and environment, the child had friends through the Montabella school system, and the parties were involved in the child's schooling at Montabella. Ultimately, the trial court weighed the benefits of each school option. Although the trial court did not address the child's academic performance during his fourth-grade school year, the trial court addressed the child's school situation at Montabella on the basis of his social developments during that time and weighed the child's home environment with plaintiff in the Greenville area and the academic and sports opportunities at the Greenville schools with the consistency and friendships that the child developed at Montabella. Best-interest factor (h) encompasses the home, school, and community of the child. The trial court considered each of these aspects and ultimately found that the opportunities at the Greenville public schools did not outweigh the consistency of the child's home, school, and community at Montabella. The trial court did not commit clear legal error in its evaluation of this best-interest factor, and the evidence did not clearly preponderate in the opposite direction of the trial court's findings regarding this factor.

Regarding best-interest factor (i) (the child's reasonable preference), the trial court did not interview the child regarding his preference but found that the parties agreed that the child's preference was to remain at Montabella. The trial court considered the child's preference in light of the stability and consistency that Montabella provided and the significant changes that the child experienced regarding the parties' divorce and new relationships. As previously discussed, the trial court clearly erred by relying on the parties' opinion of the child's preference, rather than assessing the child's capability to form a preference and the child's actual stated preference. Although the trial court's findings regarding best-interest factor (i) were not against the great weight of the evidence that was presented during the de novo hearing, the trial court's clear legal error regarding this factor requires remand. See *Marik (On Remand)*, 325 Mich App at 359; *Bowers*, 190 Mich App at 56.

Best-interest factor (k) addresses domestic violence. The trial court did not make any factual findings regarding best-interest factor (k). There was no evidence in the lower court record to support that there was an act of domestic violence between the parties or that the child observed an act of domestic violence. However, there were not sufficient remarks by the trial court or support from the lower court record to discern the trial court's findings regarding best-interest factor (k), or whether the trial court deemed best-interest factor (k) irrelevant, and to facilitate appellate review. Therefore, this error requires reversal. See *Rittershaus*, 273 Mich App at 475-476.

Regarding best-interest Factor (*l*), the trial court considered that defendant's girlfriend's children attended Montabella with the child and that "there is some comfort in having your family unit." The trial court considered that changing schools would be a significant life event for the child that could affect his mental health, particularly in light of his adjustment disorder. The trial court found that, although the child was capable of adjusting to a different school, it was not in the child's best interests to change his school placement on the basis of the stability and consistency of Montabella and the concerns for the child's emotional and mental health. Although it was not apparent from the record that the child relied on defendant's girlfriend's children as a family unit and that the children socialized at school, the trial court's finding that these peers could be a source of comfort for the child was not against the great of the evidence. The parties provided extensive testimony regarding the child's mental health, adjustment disorder, and responses to family changes. Plaintiff and the child's counselor testified that the child's emotional regulation improved, he developed new friendships, and attending Greenville public schools with his new friends could be beneficial for his social development. The trial court had the opportunity to assess the credibility of the witnesses and gave greater weight to defendant's testimony that consistency was important for the child and that changing the child's school placement could affect the child's emotional and mental health. The evidence did not clearly preponderate in the opposite direction of the trial court's findings regarding this factor.

In sum, the trial court's findings, particularly that factors (a), (b), (c), (e), (h), and (j) weighed equally or neutrally regarding a change of the child's school and that factors (d) and (*l*) weighed against changing the child's school placement, were supported by the evidence on the record. However, the trial court clearly erred in its evaluation of best-interest factor (i) and by failing to consider best-interest factors (f), (g), and (k). The trial court's clear legal errors regarding best-interest factors (i), (f), (g), and (k) require remand. See *Rittershaus*, 273 Mich App at 475-476.

Reversed and remanded for further consideration of the best-interest factors consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Deborah A. Servitto