MacINTYRE v MacINTYRE (ON REMAND)

Docket No. 255368. Submitted May 5, 2005, at Lansing. Decided July 21, 2005, at 9:05 a.m.

Patrick J. MacIntyre brought a divorce action in the Oakland Circuit Court against Regina M. MacIntyre, which action included a stipulation for arbitration of the issue of custody of their minor child in accord with the domestic relations arbitration act, MCL 600.5070 *et seq*. The arbitrator, using the factors in MCL 722.23 to determine the best interests of the child, awarded sole custody to the plaintiff. The defendant requested that the circuit court vacate that determination and conduct an evidentiary hearing de novo, MCL 600.5080. The court, Michael Warren, J., reviewed the arbitrator's record and entered a judgment of divorce consistent with the arbitrator's award of custody. The defendant appealed. The Court of Appeals, NEFF, P.J., COOPER and R. S. GRIBBS, JJ., vacated the judgment in part and remanded the case for an evidentiary hearing regarding the best interests of the child, holding that the circuit court is duty-bound to exercise its own judgment regarding child custody by conducting a hearing de novo upon request to determine that the custody arrangement would be in the child's best interests. 264 Mich App 690 (2005). The Supreme Court reversed the decision of the Court of Appeals, concluding that, as long as the circuit court is able to determine independently what custodial placement is in the best interests of the child, an evidentiary hearing is not required in all cases, and that in this case the circuit court was able to make an independent determination without a hearing. The Supreme Court remanded the case to this Court to review the defendant's claim that the arbitrator failed to consider all the evidence in rendering her child custody decision and that the circuit court therefore improperly ratified the arbitrator's decision. 472 Mich 882 (2005).

On remand, the Court of Appeals *held*:

The circuit court and the arbitrator properly considered each of the "best interests of the child" factors listed in MCL 722.23 and rendered factual findings consistent with the record evidence. There is no basis on which to find that the circuit court abused its discretion in granting the plaintiff sole physical custody of the child.

Affirmed.

*Michelle E. Areeda, P.L.L.C.* (by *Michelle E. Areeda*), for the plaintiff.

*Puzzuoli, Hribar, Iafrate, Majerowicz, Gaber, Jansen & Kobler* (by *Felice V. Iafrate*) for the defendant.

ON REMAND

Before: NEFF, P.J., and JANSEN and COOPER, JJ.

PER CURIAM. In our original opinion, we found that § 5080 of the domestic relations arbitration act[1] required a trial court to conduct a de novo evidentiary hearing upon a party's request in order to make the ultimate determination regarding the best interests of a minor child.[2] The Michigan Supreme Court reversed our opinion vacating the trial court's judgment and remanding for a de novo evidentiary hearing, holding that "as long as the circuit court is able to 'determine independently what custodial placement is in the best interests of the children[,]' an evidentiary hearing is not required in *all* cases."[3] The Court found that, in *this* case, the trial court "was able to make such an independent determination without a hearing."[4] Accordingly, we are directed on remand to consider defendant's remaining issue on appeal.[5]

Defendant contends that the arbitrator failed to consider all the evidence in rendering her child custody decision and, therefore, her factual findings were

---

[1] MCL 600.5080(2).

[2] *MacIntyre v MacIntyre*, 264 Mich App 690, 697; 692 NW2d 411 (2005) (*MacIntyre I*).

[3] *MacIntyre v MacIntyre*, 472 Mich 882 (2005) (*MacIntyre II*), quoting *Harvey v Harvey*, 470 Mich 186, 187; 680 NW2d 835 (2004) (emphasis added).

[4] *Id.*

[5] A history of the proceedings in this case appears in our original opinion. *MacIntyre I, supra* at 691-692.

against the great weight of the evidence and her ultimate determination to grant plaintiff sole physical custody was not in the minor child's best interests. Therefore, defendant asserts that the trial court's ratification of the arbitration award was improper. In relation to child custody cases, we review the trial court's findings of fact pursuant to the "great weight of the evidence" standard, and discretionary rulings, including the court's ultimate determination of custody, for an abuse of discretion.[6]

The trial court agreed with the arbitrator's finding that an established custodial environment existed with both parties. In order to change that custodial environment, a party must prove by clear and convincing evidence that the change is in the minor child's best interests.[7] The twelve factors to be considered in determining the best interests of a minor child are enumerated in MCL 722.23.[8] In rendering his or her custody

---

[6] *Foskett v Foskett*, 247 Mich App 1, 5; 634 NW2d 363 (2001).

[7] MCL 722.27(1)(c); *Brown v Loveman*, 260 Mich App 576, 594; 680 NW2d 432 (2004), quoting *DeGrow v DeGrow*, 112 Mich App 260, 269-270; 315 NW2d 915 (1982).

[8] MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

determination, the finder of fact must state his or her factual findings and conclusions under each best interest factor.[9] These findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties.[10] However, the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings.[11]

In this case, the arbitrator found that factors (b), (e), (g), (h), (j), and (k) favored plaintiff, while the parties were equal with regard to factors (a), (c), (d), (f), and (*l*).

---

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

[9] *Foskett, supra* at 9.

[10] *Id.* at 12, citing MCR 2.517(A)(2), and *Fletcher v Fletcher*, 447 Mich 871, 883; 526 NW2d 889 (1994) (*Fletcher II*). See also *LaFleche v Ybarra*, 242 Mich App 692, 700; 619 NW2d 738 (2000).

[11] *Foskett, supra* at 5, quoting *LaFleche, supra* at 695.

The arbitrator indicated that she considered the minor child's preference under factor (i), but did not state that preference on the record. The trial court agreed with the arbitrator that it was in the child's best interests to grant plaintiff sole physical custody. However, after reviewing the entire record, the trial court found that factor (c) slightly favored plaintiff and that the parties were equal with regard to factor (e). Defendant now challenges the trial court's findings with regard to each best interest factor except factor (*l*).[12]

The trial court found the parties equal in regard to factor (a). Factor (a) refers to "[t]he love, affection, and other emotional ties existing between the parties involved and the child."[13] Defendant contends that plaintiff's negative results on an objective psychological exam, the Minnesota Multiphasic Personality Inventory (MMPI), should tip this factor in her favor.[14] However, Dr. Ira Schaer testified that this test is based only on actuarial tables and found that plaintiff presented himself quite differently during interviews.[15] Defendant retained an expert to review the psychological examinations. That doctor testified that she would have conducted more objective testing and indicated that she would have weighed some factors differently. The doctor also admitted that she had not interviewed the

---

[12] Factor (*l*) is a catchall, referring to "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*).

[13] MCL 722.23(a).

[14] Dr. Ira Schaer conducted the Friend of the Court psychological examinations and administered the MMPI test. The MMPI results indicated that plaintiff may be psychologically inaccessible, unable to form bonds and attachments, potentially explosive toward others, and rigid in his stance on issues.

[15] Dr. Schaer testified that plaintiff's test results indicated that he was a positive and cheerful person. Yet, plaintiff reported during the evaluation that he was depressed.

parties and that Dr. Schaer conducted the examinations within professional standards. Based on this evidence, the trial court properly declined to place more emphasis on the MMPI test results.

Furthermore, the record evidence supports the trial court's finding on this factor. The record evidence reveals that the child loves and is bonded with both his parents, although each puts his or her own interests ahead of the child's. Defendant demonstrates an unhealthy dependence on the child, makes inappropriate remarks about plaintiff, and reveals her volatile anger toward plaintiff in front of the child. Plaintiff spends many nights and weekends away from the home and the child to engage in optional work activities.[16] Accordingly, finding the parties equal on this factor is not against the great weight of the evidence.

The trial court determined that factor (b) slightly favored plaintiff. Factor (b) measures "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any."[17] Although each party equally assisted the child with his schoolwork, hobbies, and religious education, the arbitrator found that plaintiff was the "rule giver" and was better able to provide guidance. Defendant often placed her need for the child's affection above his need for discipline. The child admitted to Dr. Schaer in front of defendant that defendant provides little support, direction, and discipline. This evidence supports the trial court's finding on this factor.

The arbitrator determined that the parties were equal with regard to factor (c). Upon a review of the

---

[16] Plaintiff is a high school teacher and coaches extracurricular competitive robotic and electric car programs.

[17] MCL 722.23(b).

record, the trial court determined that this factor slightly favored plaintiff. Factor (c) refers to "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state . . . ."[18] The evidence shows that both parties are willing and able to provide for the child. However, the trial court weighed this factor in favor of plaintiff in light of defendant's evasive testimony regarding her reasons for discontinuing the child's therapy sessions. In light of this fact, the evidence does not clearly preponderate against the trial court's finding on this factor.

The trial court found the parties equal with regard to factor (d). Factor (d) refers to "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity."[19] The evidence reveals that the child had consistently lived with both parents throughout his life and that this environment became more volatile over the years. In reaching this conclusion, the arbitrator listed several instances in which defendant interfered with plaintiff's belongings or projects he had done in the home, often in the child's presence. Defendant contends that the arbitrator should have used the fact that she threw out plaintiff's expired food in her favor.[20] However, there is no record that the arbitrator made any finding based on this piece of evidence. In light of defendant's interference with plaintiff's contributions to the home, this factor actually weighs in favor of plaintiff.

_____

[18] MCL 722.23(c).

[19] MCL 722.23(d).

[20] Defendant believes that this fact positively reflects that she purchased the groceries and cared for the home. However, defendant also testified that she purposefully interfered with groceries plaintiff purchased by throwing away junk food regardless of the expiration date.

The arbitrator determined that factor (e) slightly favored plaintiff, while the trial court found the parties equal. Factor (e) refers to "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes."[21] The family unit had not been intact for some time prior to the divorce. Plaintiff resided in a mobile home in the backyard. While the divorce proceedings were pending, the parties engaged in a "nesting" arrangement, in which each parent spent time alone in the family home with the child. The arbitrator based her determination on the fact that plaintiff wanted to remain in the marital home if he was granted custody, while defendant wanted to sell the home and split the proceeds.[22] Plaintiff also indicated that he would adjust his schedule accordingly if granted physical custody. In light of this testimony, the trial court's finding, which favors defendant, is not against the great weight of the evidence.

The trial court found that there was no dispute regarding factor (f) and, therefore, found the parties equal with regard to this factor. Factor (f) refers to "[t]he moral fitness of the parties involved."[23] Defendant now contends that this factor should have been weighed in her favor because plaintiff kissed a waitress in front of the child sometime after the divorce proceedings were initiated. Even if defendant's allegation were true, it would not form the basis for a finding of immorality.[24]

---

[21] MCL 722.23(e).

[22] While defendant testified that she wanted to stay in the marital home so the child could continue in the same school system, this is not the relief she sought in her proposed property settlement.

[23] MCL 722.23(f).

[24] See *Fletcher II, supra* at 887 (an extramarital affair is an insufficient ground for a finding of immorality under factor [f]); *Hillard v Schmidt*, 231 Mich App 316, 323-324; 586 NW2d 263 (1998) (cohabitation is an insufficient ground for a finding of immorality).

Accordingly, finding the parties equal is not against the great weight of the evidence.

The trial court found that factor (g) favored plaintiff. Factor (g) measures "[t]he mental and physical health of the parties involved."[25] The record is replete with evidence of defendant's uncontrollable and inappropriate displays of anger in the child's presence.[26] However, defendant again asserts that plaintiff's negative MMPI test results should have factored against him. As we noted previously, the arbitrator and the trial court properly weighed these results. Defendant also contends that the arbitrator ignored evidence that plaintiff instigated the incident in which she hit him with an iron. Even if this allegation were true, the numerous other incidents involving defendant's volatile anger form a sufficient basis to support this finding. Accordingly, the trial court's determination of this factor is consistent with the evidence.

---

[25] MCL 722.23(g).

[26] The arbitrator relied on the following instances of defendant's anger and violence, many of which occurred in front of the child, in weighing this factor: (1) knocking plaintiff on the arm with an iron; (2) throwing cold coffee at plaintiff while the child was nearby; (3) telling the child that it "looks like we're going to get divorced—Daddy's leaving," plaintiff is "a shitty father," "we may have to move," plaintiff is an alcoholic, plaintiff works outside the home to "hurt [you]," plaintiff's mother has been in a psychiatric hospital, and plaintiff's parents are "Nazis"; (4) telling the Friend of the Court counselor that plaintiff was nothing more than a sperm donor; (5) not allowing plaintiff to watch the child while she was out of town during her scheduled parenting time; (6) not allowing the child to use the Pinewood Derby car that he had built with plaintiff; (7) sleeping with the child after the child expressed discomfort over this arrangement; (8) thinking that it was appropriate to discuss the divorce action with the child, including asking him what he told Dr. Schaer and accusing the doctor of lying in his report; (9) locking the child in his room overnight as punishment with a can in which to relieve himself; and (10) denigrating plaintiff in front of the child in Dr. Schaer's office during an interview.

The trial court found that factor (h) favored plaintiff. Factor (h) refers to "[t]he home, school, and community record of the child."[27] The arbitrator's decision was based on the fact that the child's grades and behavior at school declined following an incident in which defendant rearranged his room and damaged his belongings after he and plaintiff worked together to clean the room.[28] As a result, the child began sleeping on the couch. Defendant contends that this factor should be weighed in her favor as plaintiff only became involved in the child's boy scout activities following the initiation of divorce proceedings. However, defendant's own testimony contradicts this allegation.[29] This finding is, therefore, consistent with the record evidence.

In relation to factor (i), the arbitrator merely indicated that she considered the child's preference in making her determination. Factor (i) takes into consideration "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference."[30] The trial court need not violate the child's confidence by revealing that preference on the record.[31] Furthermore, there is no record evidence to support defendant's contention that the child is physically ill over the idea of living with plaintiff.

---

[27] MCL 722.23(h).

[28] Besides rearranging the furniture, defendant cut the wires to the child's video game system, threw some of his belongings on the garage floor, and removed the child's television console from the house.

[29] When asked, defendant admitted that plaintiff was involved in the child's boy scout activities prior to the institution of these divorce proceedings and "reluctantly" participated in the boy scouts' annual Pinewood Derbies.

[30] MCL 722.23(i).

[31] *Fletcher v Fletcher*, 200 Mich App 505, 518; 504 NW2d 684 (1993) (*Fletcher I*), rev'd in part on other grounds *Fletcher II, supra.*

The trial court found that factor (j) favored plaintiff. Factor (j) considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent . . . ."[32] There is ample evidence to support the finding that defendant was unwilling to facilitate and encourage a close relationship between plaintiff and the child. She denigrated plaintiff in front of the child and Dr. Schaer, and interfered with plaintiff's parenting time. Conversely, the child told Dr. Schaer that plaintiff does not verbally attack defendant, and plaintiff allowed the child to stay with defendant when he had to go out of town during his scheduled parenting time. Accordingly, this finding is not against the great weight of the evidence.

Finally, the trial court found that factor (k) favored plaintiff. Factor (k) refers to "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child."[33] Both parties admitted spanking the child. However, as noted previously, the child witnessed defendant physically attack plaintiff and defendant did not deny these allegations of domestic violence. While defendant also raised allegations that plaintiff had been violent toward her in the past,[34] the arbitrator found her testimony to be incredible. As we defer to the fact-finder's determinations regarding witness credibility,[35] we will not disturb this finding.

The trial court and the arbitrator properly considered each best interest factor and rendered factual findings consistent with the record evidence. As the

[32] MCL 722.23(j).

[33] MCL 722.23(k).

[34] Defendant contended that plaintiff pushed her on several occasions and would physically block her retreat during arguments.

[35] *Mogle v Scriver*, 241 Mich App 192, 201; 614 NW2d 696 (2000).

evidence supported these findings, there is no basis on which to find that the trial court abused its discretion in granting plaintiff sole physical custody of the child.

Affirmed.